## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

STEPHEN D. WESBROOK, Ph.D.

          Plaintiff,

    v.                              Civil Action No. 13-CV-494

KARL J. ULRICH, M.D.,
EDWARD A. BELONGIA,
M.D.,
BARBARA C. LEE, Ph.D.,
RONALD F. MARTIN, M.D.

          Defendants.

---

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

---

**I.**      **INTRODUCTION**

Dr. Karl Ulrich, Dr. Edward Belongia, Dr. Barbara Lee, and Dr. Ronald Martin seek dismissal of Stephen Wesbrook's claims that they tortiously interfered with his at-will employment at Marshfield Clinic. Despite pages upon pages of allegations as to why all of the defendants wanted him fired, Wesbrook fails to allege the specific wrongful conduct of each defendant necessary to survive a motion to dismiss.

1

Wesbrook seems to confuse the legal standard necessary to state a claim against a fellow employee for tortious interference with at-will employment, the claim he is asserting here, with that necessary to assert a claim for tortious interference with contract against a third party.  But courts have set a high burden for bringing claims against coworkers for tortious interference with employment, and they have done so for the express purpose of preventing plaintiffs from making an end-run around the employment at-will doctrine.  Specifically, to state a claim against a former coworker for tortious interference with at-will employment, a plaintiff must not only allege the elements of tortious interference, but also that 1) his former employer did not benefit from the defendants' acts and 2) those acts constituted a tort separate from that of tortious interference.  Wesbrook ignores this burden, and fails to allege either of these final two requirements.

Wesbrook never asserts that the Marshfield Clinic did not benefit from his termination.  This failure alone is fatal to his complaint.

In addition, he fails to even identify any independent tort he believes each of the defendants may have committed.  Assuming that his repeated references to false statements is an ungraceful way of alleging defamation does not save his complaint.  In order to allege a claim for defamation, Wesbrook must put each defendant on notice as to the actual content of the false statements he alleges.  General claims of false statements are not enough.  Referring generally to outside

documents, some several pages long, single-spaced, does not give a defendant notice of the language that is alleged to be defamatory. And, when the documents that Wesbrook fails to attach to his complaint are actually examined, it becomes apparent that these documents are not defamatory.

Therefore, even assuming that the allegations of the complaint were true (and they most emphatically are not),[1] it must be dismissed.

## II.   FACTS

This case involves an employment decision made by the Marshfield Clinic. The Marshfield Clinic is a nationally recognized health system that provides both world class patient care and top notch research in various medical fields. The parties to this suit were all shareholders or employees of the Marshfield Clinic at all times relevant to the allegations in the complaint.

Karl Ulrich was the President and CEO of the Marshfield Clinic, as well as a physician, shareholder and member of the Board. (Complaint ¶ 5.) In February 2012, Dr. Ulrich left his position at Marshfield Clinic. (Complaint ¶ 5.) While he was still President and CEO of the Marshfield Clinic, the shareholders (each of

---

[1] As can be seen from the Complaint, Wesbrook inserted himself into various governance disputes while employed at the Clinic. His self-serving version of what happened in those disputes is as irresponsible as it is irrelevant. It also ignores the many complaints made against Wesbrook for his abusive management style. But, at this stage of the proceeding, all of this is irrelevant. Wesbrook does not, and cannot, allege any specific defamatory statements made by any of the defendants, nor does he allege that Marshfield Clinic did not benefit from his termination. Even under his fairly tall version of the facts he has no claim.

whom had a vote but no equity in the organization) voted to convert the organization to a non-stock corporation.  (Complaint ¶¶ 35 & 145.)

Ronald Martin is a physician at the Marshfield Clinic and a member of its Board of Directors.  (Complaint ¶ 8.)  Martin is the Chairman of the Board's Audit and Compliance Committee and has been since 2011.  (Complaint ¶ 8.)

Edward Belongia is a longtime physician-researcher at the Marshfield Clinic Research Foundation.  (Complaint ¶ 6.)  There, he directs the Epidemiology Research Center.  (Exhibit A at 4.)

Barbara Lee is a scientist and another longtime researcher at the Marshfield Clinic Research Foundation.  (Complaint ¶ 7.)  Lee was the longtime Director of the National Farm Medicine Center at the Research Foundation until she stepped down in 2011.  (Exhibit A at 1.)  Despite stepping down from this position, she continues to be employed by the Research Foundation.  (Complaint ¶ 7.)

Stephen Wesbrook is the former Deputy Director of the Marshfield Clinic Research Foundation.  (Complaint ¶ 11.)  During the time that Wesbrook worked for the Clinic, he was an employee at-will.  In December, 2011, the Clinic's Board of Directors terminated Wesbrook's employment after he failed to participate in a performance improvement process instituted by the Clinic's Board of Directors.  (Exhibit E at 9; Complaint ¶¶ 156-159.)

III.   **MOTION TO DISMISS STANDARD**

A motion to dismiss tests the legal sufficiency of a complaint.  To survive a motion to dismiss, the complaint must contain sufficient factual allegations which, if accepted as true, would state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The facts that must be alleged to present a plausible claim will vary based upon the nature of the claim.  EEOC v. Universal Brixius, 264 F.R.D. 514, 517 (E.D. Wis. 2009).

Although consideration of a motion to dismiss is limited to the pleadings, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are "referred to in the plaintiff's complaint and are central to [his] claim."  Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (emphasis added).

Here, Wesbrook refers to several documents and asserts that they contain false statements.  Nevertheless, Wesbrook does not attach any of these documents to his complaint.  Because these documents are central to Wesbrook's claims, defendants have attached those documents to their motion.   Under these circumstances, the Court should consider these additional documents, and doing so will not convert the motion into one for summary judgment.

## IV.   LEGAL BACKGROUND

### A.   At-Will Employment.

Wisconsin has adopted the doctrine of employment at will, allowing employers or employees to terminate employment without cause at the will of either the employer or the employee.   Wolf v. F & M Banks, 193 Wis. 2d 439, 449-50, 534 N.W.2d 877 (Ct. App. 1995); Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 572, 335 N.W.2d 834 (1983).   As a result, when an employer discharges an at-will employee, that employee has legal recourse against the employer only if "the discharge is contrary to a fundamental and well-defined public policy," which must be "evidenced by a constitutional or statutory provision." Wolf, 193 Wis. 2d at 449-50.

State and federal courts in Wisconsin provide many examples of the breadth of the employment at will doctrine. For instance, in Brockmeyer, the plaintiff alleged that he was fired because he was going to testify in another employee's sex discrimination case, contrary to his employer's interests.   113 Wis. 2d at 578-79; see also id. at 567 (allowing an employer to fire an at-will employee "for good cause, for no cause, or even for cause morally wrong").   In Preston v. Wisconsin Health Fund, the plaintiff alleged that he was fired so that his supervisor could hire an unqualified woman with whom the supervisor was having an affair.   397 F.3d 539, 541 (7th Cir. 2005).   And, in Brice v. Resch, the plaintiff alleged that her offer of employment was rescinded because the CEO did

not like her body shape and did not consider her the kind of woman he would be inclined to sexually harass or with whom he would want to have a consensual romantic relationship.  Brice v. Resch, No. 10-C-711, 2011 WL 284182, at *3 (E.D. Wis. Jan. 24, 2011).  None of these allegations gave rise to a claim for wrongful termination.

In Wisconsin, the rule is clear.  "No employer should be subject to suit merely because a discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it."  Brockmeyer, 113 Wis. 2d at 573-74.  And, "[g]reed . . . does not violate a 'fundamental and well-defined public policy of Wisconsin."  Kumpf v. Steinhaus, 779 F.2d 1323, 1326 (7th Cir. 1985).

### B.      Tortious Interference With At-Will Employment.

Presumably, it is because Dr. Wesbrook realizes that he has no legal recourse against the Clinic for his termination that he is instead filing these claims for tortious interference of contract against four of his former fellow employees. For the reasons discussed below, courts view such claims with suspicion.

A tortious interference claim against a fellow employee or manager is not "the typical tortious interference case" where an outside third party interferes with a contractual relationship.  397 F.3d at 542-43.  Instead, the alleged "interferers" are employees who may be acting as agents of their employer.  See Schindler v. Marshfield Clinic, No. 05-C-705, 2007 WL 60924, at *17 (W.D. Wis., Jan. 4,

2007).  "The struggle is internal to the employer," and the employer "will find it hard to control its employees" if they can sue each other over decisions about promotion, demotion, and termination.  397 F.3d at 543.

These concerns are especially pressing in the at-will employment context because "the employment 'contract' in an at-will employment arrangement is less obviously susceptible to interference."  Schindler, 2007 WL 60924, at *17.  After all, an employer hires an at-will employee because the employer does not want the employee "to have a right to sue it for breach of contract if it fired him."  Preston, 397 F.3d at 543.  Yet, "[t]he practical effect of allowing suit against a coworker or a corporate officer" for interfering with an at-will employment relationship "might be to transform employment at will into employment terminable only for cause."  Id.

For these reasons, and to prevent tortious interference claims from being used as an end run against at-will employment, the Seventh Circuit set a high burden for at-will employees attempting to bring tortious interference claim against a fellow employee or manager.  Such plaintiffs must not only meet the elements of tortious interference, they must also show that "the employer did not benefit from the defendant's act" and that "the act was independently tortious, for example, as fraud or defamation."  Preston, 397 F.3d at 544.

1.    **Elements of Tortious Interference.**

Under Wisconsin law, a party seeking to recover for tortious interference with contract must establish: (a) an actual or prospective contract existed between the plaintiff and a third party; (b) the defendant interfered with that contract or prospective contract; (c) the interference was intentional; (d) the interference caused plaintiff to sustain damages; and (e) the defendant was not justified or privileged to interfere.  Wis. J.I.–Civil 2780 (2007).

Employee conduct may be privileged on public policy grounds if it is in furtherance of some interest of societal importance.  Wolf, 193 Wis. 2d at 460-61. Employers are encouraged to investigate and correct employee-related problems, and employers and employees have a "common interest" that employees discuss "matter[s] of concern in the workplace," such as allegations about employee misconduct.  Id. at 461.  Employees are privileged to provide truthful information and honest advice, and doing so cannot constitute improper interference with contract.  Liebe v. City Fin. Co., 98 Wis. 2d 10, 14, 295 N.W.2d 16 (Ct. App. 1980).  This privilege is destroyed only if there is evidence that the defendant acted from "ill will or an improper motive towards the plaintiff."  Wolf, 193 Wis. 2d at 462.

The majority of Wesbrook's complaint consists of allegations that the defendants had improper motives and ill will toward him. At the motion to dismiss stage, these allegations are sufficient to state a plausible claim that the

defendants' conduct was not privileged.  Yet "more is required" to state a claim against an officer or fellow employee for tortious interference of an at-will employment contract.  Preston, 397 F. 3d at 543-44.

### 2. Allegations that Employer Did Not Benefit.

As stated above, a plaintiff alleging tortious interference with at-will employment must also allege that his former employer did not benefit from the defendant's actions.  Preston, 397 F.3d at 544.  This requirement is necessary to show that the defendant actually interfered with -- rather than carried out -- the will of the employer.

In Preston, the plaintiff had been a director of a dental clinic that lost money under his leadership.  Id. at 541.  The defendant, who was newly appointed as the clinic's CEO, fired Preston and replaced him with a woman with whom the CEO may have been having an affair.  Id.  When analyzing whether the clinic benefitted from the CEO's actions, the Preston court looked for evidence that the clinic's trustees realized, in retrospect, that terminating Preston had been a mistake.  Id. at 544.  It found none.  The court explained that the trustees "undoubtedly expected their new CEO to wield the axe."  Id.  Further, the trustees made no effort to re-employ Preston, which would have been "a natural step to have taken had they thought it a mistake (or worse) to fire him."  Id.  Finally, the trustees had ratified Preston's discharge, and there was no evidence that they regretted his replacement.  Id.  Under these circumstances, Preston failed to show

that his former employer did not benefit from the defendant's actions, and summary judgment was proper.

At the motion to dismiss stage, Wesbrook has to allege facts which demonstrate that the Marshfield Clinic did not benefit from the defendants' actions.  If he survives this motion to dismiss, he will ultimately have to have evidence to show that the defendant employees actually interfered with Wesbrook's at-will contractual relationship so that the Clinic regrets his termination and has concluded that it was a mistake.  That this requirement is difficult to meet is further evidence of the unwillingness of courts to permit an end-run around the at-will employment relationship.

> ### 3.    Allegations that Defendants' Act Constituted an Independent Tort.

Finally, failure to allege the elements of an independent tort is fatal to a complaint for tortious interference with at-will employment.  For example, the Eastern District of Wisconsin dismissed a claim for tortious interference with contract when the CEO allegedly rescinded the plaintiff's  job offer because he did not like her body shape: "There is no suggestion that [the CEO] committed any kind of independent tort against [the plaintiff] apart from the alleged tortious interference. Allowing such a claim to proceed would effectively turn her at-will job (that is, terminable at will) into an offer terminable only for certain causes." Brice, 2011 WL 284182, at *2.

Here, Wesbrook does not actually allege that the defendants committed an independent tort.   However, he makes some suggestion that the defendants committed an independent tort, as he alleges that each of the defendants made false statements about him.   Those allegations come closest to the tort of defamation.[2]   Thus, to survive a motion to dismiss, he must also allege that defendants' conduct rises to the standard of the tort of defamation.

### C.   Defamation.

To survive a motion to dismiss, a plaintiff must plead his allegations of defamation with particularity.   When pleading libel or slander, "the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally."   Wis. Stat. § 802.03(6); see also Thompson v. Kiekhaefer, 71 F.R.D. 115, 117 (E.D. Wis. 1976) (dismissing a slander complaint because "the precise language which is said to be slanderous is not identified in even a general fashion," and therefore, "the complaint fails to comply with the requirements of Wisconsin law"); Schindler, 2007 WL 60924, at *12 (concluding that there is no conflict between Wis. Stat. § 802.03 and the Federal Rules of Civil Procedure.").

---

[2] Wesbrook could not actually bring a defamation claim against his former employer and fellow employees because it would be preempted by the Workers Compensation Act.   Wolf, 193 Wis. 2d at 455.   The Workers Compensation Act is the exclusive remedy for an employee's injuries arising out of employment, including injury to reputation.   Id.   So, again, it appears that Wesbrook is attempting to use a tortious interference cause of action as an end run around a claim he cannot bring.

A defamatory statement is one that is (a) false; (b) communicated by speech, conduct, or writing to a third person; and (c) tends to harm the reputation of another as to lower the person in the estimation of the community or to deter others from associating or dealing with the person. Wis. J.I.-Civil 2501; see also Torgerson v. Journal/Sentinel, Inc., 210 Wis. 2d 524, 534, 563 N.W.2d 472 (1997). An opinion cannot be false and therefore cannot form the basis of a defamation action. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339 (1974). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Id. at 339-40. Instead, statements that are alleged to be defamatory must be statements that assert or imply facts. Id.

Not only must this Court determine that Wesbrook has alleged the actual words he claims are defamatory, the Court "must determine in the first instance whether a communication is capable of a defamatory meaning." Starobin v. Northridge Lakes Dev. Co., 94 Wis. 2d 1, 10, 287 N.W.2d 747 (1980). To do this, the Court must determine that the language, as understood in its plain and popular sense, asserts or implies a statement of fact which is, on its face, damaging to Wesbrook's reputation. See, e.g., Frinzi v. Hanson, 30 Wis. 2d 271, 276, 140 N.W.2d 259, 261 (1966). The Court must assume that the facts asserted or implied by the communication and identified in the complaint are false.

Schaeffer v. State Bar of Wis., 77 Wis. 2d 120, 124, 252 N.W.2d 343 (1977). Then, the Court must determine if the assertion is, on its face, the type of assertion that tends to harm the reputation of another as to lower the person in the estimation of the community or to deter others from associating or dealing with the person.  Tatur v. Solsrud, 174 Wis. 2d 735, 741-42, 498 N.W.2d 232 (1993). If, when given their natural meaning, the Court determines that the words complained of are not capable of a defamatory meaning, that ends the matter. See, e.g., Williams v. Journal Co., 211 Wis. 362, 370, 247 N.W.2d 435 (1933).

For example, the Wisconsin Supreme Court determined that statements in an editorial were not capable of a defamatory meaning, even though the editorial described the plaintiffs' lawsuit as "a sort of nuisance action, apparently meant to harass the city administration."  Waldo v. Journal Co., 45 Wis. 2d 203, 206, 172 N.W.2d 680 (1969).  The court unanimously rejected the plaintiffs' assertion that this language was defamatory.  See id. at 209.  To find it defamatory "would result in a strained and unnatural construction, and give effect to innuendos that are neither apparent directly from the language nor arise by clear implication."  Id. at 210.  The court explained that any lawsuit "is either with or without merit . . . depending upon whose glasses are being looked through or whose opinion is being given or sought."  Id. at 209.  As a result, the trial court did not err when it dismissed the complaint with prejudice.  See id. at 207.

Similarly, in <u>Tatur</u>, a unanimous Wisconsin Supreme Court concluded that a letter misrepresenting how incumbent candidates voted on certain resolutions was not libelous in its face.  174 Wis. 2d 735, 741.  The court reasoned that "[n]one of the issues mentioned in the letter . . . are of the nature that a vote on one side or the other could harm the reputation of the voting official as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Id.</u> at 741.  Even if the plaintiffs could show that the misrepresentation actually caused some people to vote against them, the result would not change: "unless the statement is libelous on its face it is not made so because of the effect or damage it might have on [a] candidacy."  <u>Id.</u> at 741-42.

## V.     <u>ARGUMENT</u>

This Court should dismiss the complaint because it fails to state a claim for tortious interference with at-will employment against any of the four defendants. The standard for stating such a claim is very high because courts are unwilling to permit an end-run around the at-will employee doctrine.  Here, Wesbrook fails to meet that high standard.  Because the Court must determine whether the claims against each defendant stand on their own, the claims against each defendant are addressed individually.

### A.     <u>The Claims Against Dr. Martin Must Be Dismissed.</u>

This Court should dismiss Wesbrook's claims against Dr. Martin for three independent reasons.   First, Wesbrook fails to allege any particular false

statements by Dr. Martin.  Second, Wesbrook does not allege that the Clinic did not benefit from Dr. Martin's alleged actions.  Finally, Wesbrook fails to allege that Dr. Martin's actions caused his termination.

### 1. Wesbrook Never Specifically Identifies Dr. Martin's Allegedly False Statements.

Wesbrook's complaint spends a great deal of time focusing on Dr. Martin's alleged motivation for wanting Wesbrook fired, but says next to nothing about any defamatory statements Dr. Martin is alleged to have made.  Paragraphs 56 and 57 allege that that Dr. Martin suggested Wesbrook be fired for calling a law firm on behalf of the Clinic, but do not allege that Dr. Martin made any false statements about Wesbrook.  Paragraphs 84-90 allege various reasons why Dr. Martin may have been motivated to have Wesbrook's employment terminated, but, again, do not allege that Dr. Martin made any false statements about Wesbrook.

In fact, only one paragraph out of the 164 paragraphs in the complaint alleges that Dr. Martin made any false statements about Wesbrook, and that paragraph provides no clue as to what the allegedly false statements were.  Paragraph 144 begins, "[Drs.] Ulrich and Martin's efforts to convince the Board of Directors to fire Wesbrook using false information accelerated and intensified during this time period to prevent him from assisting Vidaillet, Khan, and Brucker in their efforts to investigate or report their suspicions of fraud against

Shareholders." That's it. In 164 paragraphs, Wesbrook fails to specifically identify a single false statement Dr. Martin allegedly conveyed to convince the Board of Directors to fire Wesbrook. The court should dismiss the claims against Dr. Martin for this reason alone. <u>Thompson</u>, 71 F.R.D. at 117 (dismissing a defamation claim because "the precise language which is said to be slanderous is not identified in even a general fashion.").

**2.  Wesbrook Does Not Allege that The Clinic Did Not Benefit From Dr. Martin's Actions.**

This Court should also dismiss Wesbrook's claims against Dr. Martin because they fail to allege that the Marshfield Clinic did not benefit from his termination. <u>See Preston</u>, 397 F.3d at 544. As explained above, this requirement is necessary to show that the defendant actually interfered with the will of the at-will employer, and Wesbrook will ultimately have to present evidence showing that the Clinic regrets his termination and has concluded that it was a mistake.

Although Wesbrook alleges that the Research Foundation thrived during the time that he was Deputy Director (Complaint ¶ 20), he does not make any allegation about how it performed after he left. Wesbrook makes only two allegations about events that occurred after his termination: Ulrich left the Marshfield Clinic in February 2012, and the contract Belongia referenced in his December 15, 2011 letter was never awarded. (Complaint ¶¶ 5 & 156.) Wesbrook does not allege that the Board sought to rehire him, regretted his firing,

or regretted his replacement.  <u>Preston</u>, 397 F.3d at 544.  For this reason, the claims against Dr. Martin must be dismissed.

> **3.**      **Wesbrook Fails to Allege That Dr. Martin's Actions Caused His Termination.**

Finally, Wesbrook fails to state a claim against Dr. Martin because, when the allegations against Dr. Martin are examined, it becomes apparent that, even under Wesbrook's version of the facts, Dr. Martin did not cause Wesbrook's termination.  At paragraph 56, Wesbrook alleges that in July of 2010, after learning that Wesbrook had placed a call to a law firm, "Martin suggested that Wesbrook be fired on the spot and escorted out of the Clinic by security guards." However, Wesbrook was not terminated because other directors opposed Martin's suggestion and Martin declined to make a formal motion to terminate Wesbrook. (Complaint ¶¶ 56-57.)  Accordingly, Martin's suggestion in July, 2010 did not cause Wesbrook to be terminated.

There are no specific allegations about anything Dr. Martin did that caused Wesbrook to be fired in December of 2011.  At paragraph 84, Wesbrook alleges that Dr. Martin and the other defendants "campaign[ed] to have the full Board of Directors fire Wesbrook" from September, 2011 to December, 2011.  He also alleges that Dr. Martin's "efforts to convince the Board of Directors to fire Wesbrook using false information" accelerated and intensified in December of 2011.  (Complaint ¶144.)   Yet, the complaint does not make any specific

allegations as to what Dr. Martin allegedly did in furtherance of this campaign and does not identify any false information that Dr. Martin created or used. Instead, Wesbrook alleges his termination was caused by Dr. Ulrich, Dr. Lee, and Dr. Belongia's actions.  (Complaint ¶¶ 149-159.)

An allegation of causation is necessary to support a tortious interference claim, Wis. J.I. Civ. 2780, and without such an allegation, the claim against Dr. Martin should be dismissed.

### B.     Belongia.

This Court should dismiss Wesbrook's claims against Dr. Belongia for two independent reasons:  Wesbrook fails to allege that the Clinic did not benefit from Wesbrook's firing and Wesbrook fails to allege actions by Dr. Belongia's which rise to the level of an independent tort.

### 1.     Wesbrook Fails to Allege that The Clinic Did Not Benefit From Dr. Belongia's Actions.

This Court should dismiss Wesbrook's claims against Dr. Belongia for the same reason the claims against Dr. Martin should be dismissed -- Wesbrook fails to allege that the Clinic did not benefit from his termination.   See Preston, 397 F.3d at 544.  As noted above, this element is necessary to sustain a claim for tortious interference with an at-will employment relationship.

**2.      Wesbrook Fails to Allege Actions by Dr. Belongia Which Rise to the Level of an Independent Tort.**

Additionally, the claim against Dr. Belongia should be dismissed because none of the allegations support an independent defamation claim against him. Although Wesbrook refers to two letters written by Dr. Belongia  (Complaint ¶¶ 120 and 156) and asserts that these letters contain false statements, he does not attach the letters to his complaint.   When the two letters (November 30, 2011 (attached as Exhibit A) and December 15, 2011 (attached as Exhibit C)) are reviewed, which is appropriate to do on a motion to dismiss, it becomes apparent that the words complained of are not capable of a defamatory meaning.  Each will be addressed in turn.

**a.      The November 30, 2011 Letter.**

Wesbrook alleges that the November 30, 2011 letter consists of three categories of statements: 1) Dr. Belongia's views about how he would run the Research Foundation if he were the director; 2) restatements of allegations Dr. Ulrich made against Vidaillet and Wesbrook that had been rejected by both the Board of Trustees and the Clinic Board in September, 2010; and 3) a collection of allegations that Dr. Belongia and Dr. Lee previously made in July, 2011. (Complaint ¶ 120.)

The first category -- Dr. Belongia's "views" about how he would run the Research Foundation if he were Director -- is clearly opinion.  Statements of opinion cannot form the basis of a defamation claim.  Waldo, 45 Wis. 2d at 209.

The second category -- restatements of allegations that already been rejected by both the Board of Trustees and the Clinic Board  -- cannot support a claim that Dr. Belongia interfered with Wesbrook's at-will employment.   An allegation of causation is necessary to support a tortious interference claim.  Wis. J.I. Civ. 2780.  Wesbrook acknowledges that Dr. Ulrich's allegations had already been presented to and rejected by the Clinic Board.  (Complaint ¶¶ 64-72.)  The information could not have caused his termination if it had already been rejected by the Clinic Board.

Turning to the third, category -- the assertion that Belongia and Lee made a series of false allegations against Vidiallet and Wesbrook in July, 2011, which were then repeated in the November 30, 2011 letter -- Dr. Wesbrook fails to identify these allegations with any specificity whatsoever.  (Complaint ¶ 120.) The purportedly false allegations from July, 2011 are not identified in even a general fashion.  For that reason alone, the complaint falls far short of the pleading requirements for defamation, warranting dismissal.   Wis. Stat. § 802.03(6); see also Thompson, 71 F.R.D. at 117.

Even giving Wesbrook the benefit of the doubt and assuming that he is referring to a letter that Drs. Lee and Belongia sent to Dr. Ulrich on July 15, 2011, Wesbrook's allegations against Dr. Belongia must be dismissed.  Just a cursory glance at that letter, attached to this motion as Exhibit B, demonstrates that it is not capable of a defamatory meaning.

The majority of the July 15, 2011 letter does not even relate to Wesbrook.  Rather, it is about the Director of the Research Foundation, Vidiallet.  In the letter, Drs. Lee and Belongia "formally request that the position of Director of Marshfield Clinic Research Foundation . . .require a time commitment of no less than .8 FTE."  (Exhibit B at 1.)  The letter goes on to discuss how Vidiallet's other time commitments prevent him from fully engaging in the tasks necessary for the success of the Research Foundation.  These suggestions were not capable of defaming Wesbrook because they were not about him.

Indeed, there are only two references in the July 15, 2011 letter to Wesbrook's position as Deputy Director, and neither reference is capable of a defamatory meaning:

> [The fact that the Director has other time commitments] creates an environment where decisions are often postponed, follow-through is inconsistent, and leadership responsibilities are often delegated to the Deputy Director.
>
> The majority of administrative issues are delegated to the Deputy Director and time-sensitive decisions and actions can be delayed.

(Exhibit B at 1.)

Both statements lend support to the assertion that Vidiallet had too many time commitments, and as a result, some of his duties are delegated to Wesbrook. Even assuming this assertion was false, it would not harm Wesbrook's reputation so as to lower him in the estimation of the community or to deter others from associating or dealing with him.   Tatur, 174 Wis. 2d at 741-42.   Because the words are not capable of a defamatory meaning, that ends the matter.

### b.     The December 15, 2011 Letter.

Dr. Wesbrook alleges that the December 15, 2011 letter contains false statements about a potential research contract, but he does not allege that the letter defamed him.   (Complaint ¶ 156.)   As a matter of law, it does not.

The statement that Dr. Wesbrook alleges was "false and deliberately misleading" is:

> By February we expect to sign a $15 million contract with MedImmune for a prospective multicenter study of RSV and other respiratory virus infractions in hospitalized adults.  I will be the Principal Investigator for this study . . . .
>
> If the current MCRF leadership remains unchanged, I will need to explore other career opportunities in the coming months.   I will also have an ethical obligation to notify MedImmune before the contract is signed if I cannot commit to serving as PI of the study.   MedImmune would then decide if they wish to continue working with MCRF or designate another site to lead the study.   This decision would obviously affect many employees at MCRF in addition to myself.

(Exhibit C at 1.)   Dr. Wesbrook argues that this statement is untrue because "research contracts are not granted to individual investigators but to institutions," and because "the Research Foundation had not received any such communication."  (Complaint ¶ 156.)

Even if the Court assumes that the factual statements in this letter were false and that these statements caused Wesbrook's termination, "more is required" to state a claim against a fellow employee for tortious interference with at-will employment.  Preston, 397 F.3d at 544.  As explained above, Wesbrook must also show, among other things, that the act was independently tortious as fraud or defamation.   The allegedly false statement in the December 15 letter was not capable of a defamatory meaning for two reasons.

First, the letter does not assert or imply any facts about Dr. Wesbrook that are alleged to be false.  Instead, the facts that are alleged to be false -- that the Research Center was going to be awarded a research grant with Dr. Belongia as the Principal Investigator -- were about Dr. Belongia.  The letter does not make the type of assertion about Dr. Wesbrook that tends to harm his reputation, lower him in the estimation of the community, or to deter others from associating or dealing with him.  Tatur, 174 Wis. 2d at 741-42.

Second, the letter contains little more than Dr. Belongia's opinion that if he left the Research Center, there might be consequences for the Research Center

and its other employees.  An expression of opinion cannot be false and therefore cannot form the basis of a defamation action.  <u>Gertz</u>, 418 US. at 339.

For the reasons discussed above, when the documents Wesbrook refers to in his complaint are actually examined, it becomes apparent that they fail to support a claim that Dr. Belongia's acts were independently tortious as defamation.  <u>Preston</u>, 397 F.3d at 544.   Accordingly, the claim against Dr. Belongia should be dismissed.

### C.     Lee.

This Court should dismiss the claims against Dr. Lee for two independent reasons.  First, as with Dr. Martin and Dr. Belongia, Wesbrook fails to allege that the Clinic did not benefit from his firing.  Second, Wesbrook fails to allege that Dr. Lee's actions rise to the level of an independent tort.

#### 1.     Wesbrook Fails To Allege that The Clinic Did Not Benefit From Dr. Lee's Actions.

This Court should dismiss Wesbrook's claim against Dr. Lee because he fails to allege that the Clinic did not benefit from his termination.  <u>See Preston</u>, 397 F.3d at 544.  This failure is fatal to Wesbrook's claims.

#### 2.     Wesbrook Fails to Allege Actions by Dr. Lee Which Rise to the Level of an Independent Tort.

Wesbrook's allegations against Dr. Lee are contained in paragraphs 120 - 124 and 151-155.  He alleges that Lee made or was somehow involved in three

false statements: 1) "a collection" of false allegations that were made in July, 2011; 2) Dr. Belongia's November 30, 2011 letter to Dr. Ulrich that restated the false allegations that they had made in July, 2011; and 3) unidentified statements to some retired physicians that resulted in a letter from Melvin Laird.  (Complaint ¶¶ 120, 121, 123-124.)  Each of these allegations will be addressed in turn.

### a.    The July 2011 Allegations.

As explained above, Wesbrook does not provide any specific allegations made by Dr. Lee in July of 2011 that were false.  For this reason alone, the Court should dismiss his allegations against Dr. Lee relating to alleged false statements in July, 2011.  Again, giving Wesbrook the benefit of the doubt, however, the July 15, 2011 letter Drs. Lee and Belongia sent to Dr. Ulrich is not capable of a defamatory meaning for the reasons stated above.  The majority of the July 15, 2011 letter does not relate to Wesbrook, but rather, to Dr. Lee and Belongia's opinion and recommendation that the Clinic should increase the Director to a .8 FTE position.  Drs. Lee and Belongia's recommendation is not capable of a defamatory meaning because it does not assert or imply a statement of fact which is, on its face, damaging to Dr. Wesbrook's reputation.  Frinzi, 30 Wis. 2d at 276.

### b.    November 30, 2011 Letter.

While Wesbrook claims Dr. Lee assisted in writing the November 30, 2011 letter, he only identifies one subject in this letter that he alleges is attributable Dr. Lee.  Wesbrook claims that the November 30, 2011 letter contained a "collection

of allegations" that Belongia and Lee made in July, 2011 which were found not to be true by the Research Foundation Board of Trustees in August.  (Complaint ¶ 120.)  As discussed above, however, the majority July 15, 2011 letter does not deal with Wesbrook, and the portions that do are not capable of a defamatory meaning.

If Wesbrook believes that there are other, specific statements in the November 30, 2011 letter attributable to Dr. Lee that defame him, he fails to allege them in his complaint.  Even if his failure of pleading were excused, the remainder of the November 30, 2011 letter is not actionable and is not capable of a defamatory meaning for the reasons explained above.

### c.      The Laird Letter.

Wesbrook claims that Dr. Lee "conveyed false information" to a number of retired physicians about Wesbrook; urged these physicians to contact Dr. Ulrich, members of the Board of Directors, and others who had influence on Clinic leadership; and that her efforts resulted in Melvin Laird sending a letter to Dr. Vidaillet which "contained false information."   (Complaint ¶ 123-124.) Wesbrook claims that he was harmed when ultimately, Dr. Ulrich used the Laird letter, containing allegedly false information, "with great effect against Wesbrook."  (Complaint ¶ 124.)  Wesbrook does not attach the Laird letter to his complaint, but it is attached as Exhibit D to this brief.

These allegations fail to state a claim against Dr. Lee for two reasons. First, the false statements Dr. Lee allegedly made to the retired physicians are not pleaded with particularity, as required by Wis. Stat. § 802.03(6).  This, alone, is a basis for dismissal.

Second, the Laird letter is not defamatory as a matter of law because it does not assert or imply any fact which is damaging to Dr. Wesbrook's reputation.  Frinzi, 30 Wis. 2d at 276.  The letter was written to Dr. Vidaillet as a follow up to a conversation Laird had with Vidaillet about Vidaillet's concern that he (Vidaillet) was at risk of getting fired.  The majority of the letter sets forth Laird's opinion that Vidaillet should be more receptive to Laird's explanation of what he had learned about what people thought of Vidaillet's performance through Laird's interviews with current and former researchers and clinic employees.  It contains only one sentence that even refers to Wesbrook: "The problem is not you Humberto [Vidaillet], but your deputy director and administrative assistant at the research center."  (Exhibit D at 1.)  This sentence is not an assertion of fact, but rather, a statement of opinion, and accordingly, it is not capable of a defamatory meaning.  Waldo, 45 Wis. 2d at 209.

**D.  Ulrich.**

Wesbrook's claims against Dr. Ulrich cannot stand for three independent reasons.  First, he fails to allege that his termination did not benefit the Clinic. Second, Wesbrook cannot state a claim against Dr. Ulrich using alleged false

statements that could not have caused his termination.  The two allegedly false statements made by Dr. Ulrich that Wesbrook alleges contributed to his termination are not described with specificity and are not defamatory.

### 1. Wesbrook Fails To Allege that His Firing Did Not Benefit the Clinic.

Wesbrook must allege that his firing did not benefit the Marshfield Clinic in order to bring a tortious interference with at-will employment claim.  See Preston, 397 F.3d at 544.  He does not.

### 2. Wesbrook Cannot State a Claim Against Dr. Ulrich by Relying on Alleged False Statements that Could Not Have Caused His Termination.

The majority of Wesbrook's allegations about Dr. Ulrich do not support his claim for tortious interference with contract because Wesbrook acknowledges that they did not cause the termination of his at-will employment.  For example, the complaint spends pages discussing Ulrich's decision to fire Wesbrook in July, 2010  (Complaint ¶¶ 54-74), then acknowledges that the Board reversed Ulrich's July, 2010 termination decision.  Accordingly, Ulrich's actions leading up to that point did not, and could not have, caused the harm at issue: Wesbrook's termination.  Wis. J.I. Civil 2780 (requiring that a party seeking to recover for tortious interference establish that the interference caused the plaintiff to sustain damages).

**3.    Wesbrook Does Not Allege that Dr. Ulrich Committed an Independent Tort.**

As with Dr. Martin, Wesbrook spends much of his complaint alleging various reasons that Dr. Ulrich had for wanting Wesbrook fired.  Wesbrook claims that Ulrich wanted the power that would come with the governance change he was pursuing and that Wesbrook was an important member of the team opposing governance change.  (See, e.g., Complaint ¶¶ 31-37; 41, 54.)  Those alleged motives, however, are not an independent tort.

With respect to a potential defamation claim, Wesbrook only identifies two statements that he asserts are false and  allegedly caused his termination.  First, he alleges that Dr. Ulrich provided the Board with the Laird letter, knowing it was false.  (Complaint ¶¶ 151-155.)  Second, Ulrich provided the Board with his December 19, 2011 memorandum, attached as Exhibit E.  None of the allegations relating to these documents meet the standard for defamation.

**a.    The Laird Letter.**

As discussed with respect to Dr. Lee, the Laird letter contains opinion, not assertions of fact, and is not capable of a defamatory meaning.  To the extent that the allegations against Ulrich are based on the Laird letter, they should be dismissed.

**b.      The December 19, 2011 Memorandum.**

This Court should dismiss Wesbrook's claims against Dr. Ulrich with respect to the December 19, 2011 memorandum because Wesbrook fails to identify which statements in this nine-page, single spaced memorandum are defamatory to him.  This memorandum consists of a chronology of administrative concerns, not limited to comments about Wesbrook.  For example, a significant portion of the memo addresses problems with Dr. Vidaillet's anger management.  (See, e.g., Exhibit E at 1-2, March 24-25, 2010.)  Wesbrook alleges that "[t]his nine-page memorandum conveys Ulrich's own false interpretation of events, which conflict in significant instances with well documented facts."  (Complaint ¶ 157.)  However, he never explains which of Ulrich's interpretations are false, or what "significant instances" conflict with well documented facts.  Certainly, Wesbrook cannot claim that the entire document is false because some of the information in the memo is identical to information that is alleged in the complaint.  For example, both the memo and the complaint discuss the Board's overturning of Ulrich's decision to terminate Wesbrook.  (Complaint ¶ 72; Exhibit E at 3.)

Failing to specifically allege the claimed defamatory statements is grounds for dismissal.  Wis. Stat. § 802.03(6); Thompson, 71 F.R.D. at 117.  If Wesbrook had identified particular statements in the memorandum as defamatory, the court would be able to evaluate the language he identified, as understood in its plain and

popular sense, and decide whether it asserts or implies a statement of fact which is, on its face, damaging to the plaintiff's reputation.  See <u>Frinzi</u>, 30 Wis. 2d at 276.  As it stands now, without identifying any particular statements in the memorandum that are false assertions or implications of fact as he is required to do pursuant to Wisconsin Statute § 802.03(6) and <u>Thompson</u>, 71 F.R.D. at 117, Wesbrook's complaint fails to state a claim against Dr. Ulrich.

## VI.    <u>CONCLUSION</u>

The complaint fails to state cognizable claims for tortious interference with at-will employment.  Therefore, it must be dismissed.

Dated this 16th day of August, 2013.         DONALD K. SCHOTT


<u>/s/ Donald K. Schott</u>
Emily Feinstein, Esq.
Rachel Graham, Esq.
QUARLES & BRADY LLP
33 East Main Street, Suite 900
P.O. Box 2113
Madison, WI  53701

*Attorneys for Defendants Karl J. Ulrich, M.D., Edward A. Belongia, M.D., Barbara C. Lee, Ph.D., and Ronald F. Martin, M.D.*