IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHEN D. WESBROOK, Ph.D.,

                Plaintiff,                OPINION AND ORDER

   v.

                                             13-cv-494-wmc

KARL J. ULRICH, M.D., EDWARD A.
BELONGIA, M.D., BARBARA C. LEE, Ph.D.,
and RONALD F. MARTIN, M.D.,

                Defendants.

---

      In this civil action, plaintiff Stephen D. Wesbrook, Ph.D asserts a single claim against all defendants for tortious interference with his employment by the Marshfield Clinic.  Defendants -- all former colleagues of Wesbrook -- have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the court will grant defendants' motion for summary judgment, dismissing plaintiff's claims without prejudice.

ALLEGATIONS OF FACT

      Beginning in November 2006, Wesbrook was an employee of the Marshfield Clinic ("Clinic") and the Marshfield Clinic Research Foundation ("Research Foundation"). (Compl. (dkt. #1) ¶ 4.)  For the period relevant to plaintiff's claims, Wesbrook served as the Deputy Director of the Research Foundation. (*Id*. at ¶ 11.)  As Deputy Director, Wesbrook assisted the Director of the Research Foundation, Dr. Humberto Vidaillet, in a range of responsibilities relating to the Clinic's medical research

programs. (*Id*. at ¶ 13.) Wesbrook also previously served various other roles within the Marshfield Clinic, including as a member of the Clinic's Technology Transfer Advisory Committee, as a representative on the Clinic's Investment Committee, and as the treasurer and chair of the Finance Committee of the Diagnostic and Treatment Center. (*Id*. at ¶¶ 14-15.)

For all times relevant to this complaint, Ulrich was a physician, Clinic shareholder, member of the Clinic Board of Directors, and Clinic President and CEO. (*Id*. at ¶ 5.) Belongia was a physician-scientist at the Research Foundation and a Clinic shareholder. (*Id*. at ¶ 6.) Lee was a scientist working at the Research Foundation and a Clinic employee. (*Id*. at ¶ 7.) Martin was a physician, Clinic shareholder, and a member of the Clinic Board of Directors. (*Id*. at ¶ 8.) All defendants were either co-workers or supervisors of Wesbrook.

The Clinic is a stock corporation, recognized as a non-profit, tax exempt charitable organization, located in Marshfield, Wisconsin. (*Id*. at ¶ 9.) The Clinic is overseen by a Board of Directors. (*Id*. at ¶ 9-10.) The Research Foundation oversees the Clinic's endowments and is led by a Board of Trustees which reports to the Clinic's Board of Directors. (*Id*. at ¶¶ 22-23.)

Over the course of multiple years, Ulrich attempted to reorganize the structure of the Research Foundation and Clinic. (*Id*. at ¶¶ 23, 35, 125, 131-135, 145.) Wesbrook and Vidaillet led the opposition to these reorganization efforts. (*Id*. at ¶¶ 24-27, 38, 40-41, 54-55, 126-129, 136-142.) The reorganization of the Clinic would have changed it to resemble a more typical corporation, with more powers concentrated in the System

CEO.  (*Id*. at ¶ 35-37.)

In April 2010, following Vidaillet's public opposition to Ulrich's reorganization efforts, Ulrich opposed Vidaillet's reappointment as Director of the Research Foundation. (*Id*. at ¶ 45.)  Ulrich claimed that Vidaillet was creating a climate of fear and intimidation, which caused fifteen scientists to leave the Research Foundation.  (*Id*.)  The Board of Directors investigated the claim and concluded the cause of the scientist attrition was not fear and intimidation.  (*Id*. at ¶¶ 46-49, 61-63.)

In May 2010, Ulrich threatened to sue the University of Wisconsin in response to an email characterizing his leadership.  (*Id*. at ¶ 51.)  Ulrich claimed the material in the email was confidential, and must have been leaked by a "traitor."  (*Id*.)  Ulrich asked for the source of the material, but was not provided with a name.  (*Id*. at ¶¶ 51-53.)  He eventually withdrew his threat of legal action.

In September 2010, Ulrich terminated Wesbrook's employment -- allegedly for his role in supporting Vidaillet during the scientist attrition dispute.  (*Id*. at ¶¶ 60-67.) Approximately one week later, the Board of Directors reversed the termination and reinstated Wesbrook.  (*Id*. at ¶ 72.)  The Board of Trustees also investigated the termination and supported the reinstatement.  (*Id*. at ¶¶ 73-74.)

In August 2011, Wesbrook and Vidaillet brought concerns of possible violations of the Stark Law, 42 U.S.C. § 1395nn, to the Board of Directors.  (*Id*. at ¶¶ 75-79.) Ulrich and the Board of Directors declined to investigate the matter.  (*Id*. at ¶¶ 80-82.) In September 2011, Ulrich began monitoring Wesbrook's communications to determine whether he was reporting his concerns to government officials.  (*Id*. at ¶ 83.)  Wesbrook

continued to investigate other instances of perceived fraud throughout the fall of 2011. (*Id*. at ¶¶ 88, 105-119.)

In September 2011, Ulrich lobbied the Board of Directors to terminate Wesbrook. (*Id*. at ¶¶ 95-99.) The Board of Directors declined, but did place him on a performance improvement plan. (*Id*. at ¶¶ 99-104.)

In November 2011, Belongia sent a letter to Ulrich ("Belongia Letter"), which outlined allegations that had been collected against Wesbrook. (*Id*. at ¶ 33; Defs.' Br., Ex. 1 (dkt. #10-1).) Lee assisted Belongia in writing the letter. (Compl. (dkt. #1) ¶¶ 120-21.) Belongia then met with various members of the Board of Directors and conveyed his intent to have Wesbrook removed from his position. (*Id*. at ¶ 122.) Lee contacted various Clinic and Research Foundation employees, as well as other retired physicians, and discussed similar allegations. (*Id*. at ¶ 123-24.) For reasons not explained in the complaint, former Congressman Melvin Laird then wrote a letter ("Laird Letter") to Vidaillet regarding Belongia's and Lee's efforts. (*Id*. at ¶ 124; Defs.' Br., Ex. 4 (dkt. #10-4).)

On December 8, 2011, the Clinic restructuring plan was passed. (Compl. (dkt. #1) ¶ 145.) On December 12, 2011, Ulrich placed Wesbrook on administrative leave. (*Id*. at ¶ 148.) Ulrich then called each Board of Directors member again seeking their support for terminating him. (*Id*. at ¶ 149.) On December 13, 2011, Ulrich sent the Laird and the Belongia Letters to the members of the Board of Directors in support of the proposed termination. (*Id*. at ¶ 151.) On December 19, 2011, Ulrich provided the Board of Directors with additional documents, including a second letter from Dr.

Belongia ("Belongia Letter #2"), where he threatened to resign his physician-scientist position if the Research Foundation leadership was not changed. (*Id*. at ¶ 156; Defs.' Br., Ex. 3 (dkt. #10-3).) The letter claimed that Belongia's resignation would result in the loss of a research contract. (*Id*.) On December 19, Ulrich also wrote a "memo to file" in which he detailed his concerns about the Research Foundation's leadership ("Ulrich Memo"). (Compl. (dkt. #1) ¶ 157; Defs.' Br., Ex. 5 (dkt. #10-5).) On December 20, 2011, the Board of Directors terminated Wesbrook's employment. (Compl. (dkt. #1) ¶ 159.)

OPINION[1]

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in her favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The plaintiff need not provide detailed factual allegations, but must provide "just enough facts to raise [the claim] above the level of

---

[1] Jurisdiction over this action asserting a state law tort claim is proper because there is complete diversity in citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff Stephen Wesbrook is a citizen of the State of Virginia; defendant Karl Ulrich is a citizen of the State of California; and the other defendants are citizens of the State of Wisconsin. (Pl.'s Proof of Citizenship (dkt. #18).) As such, there is complete diversity amongst the parties. On the face of the complaint, the amount in controversy also exceeds the $75,000 threshold.

mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). A plaintiff must provide enough facts to state a claim that is plausible on its face and allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, the plaintiff can plead himself out of court by alleging facts in its complaint which demonstrate that he is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Even under this lenient standard, Wesbrook's claims for tortious interference cannot survive defendants' motion to dismiss.

Under Wisconsin law, there are five elements to the tort of interference with a contract: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the interference was intentional; (4) there was a causal connection between the interference and damages; and (5) the defendant was not justified or privileged to interfere. *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis. 2d 429, 720 N.W.2d 531. The focus of the parties' briefing, and in turn the court's, is on the fifth element -- whether plaintiff has sufficiently plead that defendants were not justified or privileged to interfere with his employment.[2]

---

[2] The parties also dispute whether Wesbrook was an at-will employee. Whether a for-cause or an at-will relationship existed does not change the analysis here, since there was an alleged contractual or prospective contractual relationship for the purpose of the first element either way. *Preston v. Wis. Health Fund*, 397 F.3d 539, 543 (7th Cir. 2005) ("Employment at-will is a contractual relationship, albeit one with no definite duration."). Similarly, as explained below, at-will status does not alter this court's determination of whether plaintiff has adequately pled the fifth element of such a claim.

I. **Tortious Interference with Employment**

To satisfy the fifth element of a tortious interference claim, plaintiff argues that this court should look to the list of factors in the Second Restatement of Torts § 767 to determine whether his allegations are sufficient to state a claim.[3]  (Pl.'s Reply (dkt. #14) 9 (citing Restatement (Second) of Torts § 767).)  In response, defendants argue that this court should follow, *Preston v. Wisconsin Health Fund*, 397 F.3d 539 (7th Cir. 2005), a Seventh Circuit Court of Appeals decision that required a plaintiff to demonstrate both that:  (1) the defendant's interference was not to the benefit of the employer; *and* (2) the act was independently tortious.  (Defs.' B. (dkt. #10) (discussing *Preston*, 397 F.3d at 544).)

In *Preston*, the court recognized that tortious interference claims brought in the context of employment raise difficult issues.  In particular, the court stressed the need to avoid converting employment at-will into employment terminable only for cause.  397 F.3d at 543 (citing Mark R. Hinkston, *Tortious Interference with At-Will Employment*, WISCONSIN LAWYER, Sept. 2001, at pp.14, 16-17, 54, 56).  To do so, the court focused on the proof required to demonstrate that the defendant had an improper motive.  *Id*.  While showing improper motive would ordinarily involve weighing the factors of § 767 of

---

Therefore, this court finds no reason to delve into the parties' dispute as to plaintiff's employment status.

[3] These factors include: the nature of the actor's conduct; the actor's motive; the interests of the other with which the actor's conduct interferes; the interest sought to be advanced by the actor; the social interest in protecting the freedom of action of the actor and the contractual interest of the other; the proximity or remoteness of the actor's conduct to the interference; and the relations between the parties.  Restatement (Second) of Tort § 767.

the Second Restatement, the *Preston* court explained that in the case of a claim against a co-worker or supervisor, "more is required than that a discharge be tainted by some private motive, such as greed, [or] personal dislike." 397 F.3d at 544. Specifically, "[t]he plaintiff must prove *both* [1] that the employer did not benefit from the defendant's act and [2] that the act was independently tortious, for example as fraud or defamation." *Id*. (emphasis added). In the court's opinion, this was the only way to account for the risk of every disgruntled former employee bringing suit against their former coworkers or corporate officers. *Id*. at 543-44.

In *Schindler v. Marshfield Clinic*, No. 05-C-705-C, 2007 WL 60924 (W.D. Wis. Jan. 4, 2007), this court explained that proof of these two *Preston* factors was required for employment-related tortious interference claims within both at-will and for-cause relationships. *Id.* *17-18. This court explained there is no reason why a claim from an employee with a contract precluding termination except for cause should be treated any differently than a claim from an at-will employee because the risk from disgruntled employees remained the same. *Id*. at *17. The only difference that does exist is whether the employee has a viable claim for breach of contract against the employer -- ultimately an irrelevant question for the purpose of a tortious interference claim against a coworker or supervisor.

Plaintiff contends that this court may nevertheless disregard the Seventh Circuit's decision in *Preston*, and presumably its own decision in *Schindler*, since federal courts are bound to follow the law of the forum state, which had not previously required the two additional components. (Pl.'s Opp'n (dkt. #14) 11-17).) While an accurate statement

of law as far as it goes, plaintiff ignores another equally-valid legal principle that is controlling on this court's: when a higher federal court has ruled on a particular point of state law, a lower court must follow that ruling in the absence of an intervening, authoritative state decision. *Lexington Ins. Co. v. Rugg & Kopp, Inc.*, 165 F.3d 1087, 1092-93 (7th Cir. 1999) (explaining that determination of state law issue by federal appellate court sitting in diversity lacks any precedential force for state courts but binds federal district courts until contradicted by higher state court). Plaintiff has not cited, nor can this court find, a more recent state appellate decision that conflicts with the Seventh Circuit's *Preston* decision. Therefore, this court is bound by *Preston*.[4] To the extent plaintiff is asking the court to *overrule Preston*, as would seem to be the case from the rhetoric in his responsive brief, he is addressing that argument to the wrong court.

## II. Application of *Preston* Factors

### A. Benefit to Employer

Turning to defendant's challenge to the sufficiency of plaintiff's allegations, the court finds that plaintiff has adequately alleged his employer Marshfield Clinic did not benefit from his termination. Unlike the plaintiff in *Preston,* who "made no effort to satisfy" the requirement, *Preston*, 397 F.3d at 544, here, Wesbrook detailed the previous contributions he made to the clinic, defendants' previous attempts to influence the

---

[4] The court recognizes that the procedural posture of this case is different than that in *Preston.* While *Preston* concerned a motion for summary judgment, that court's interpretation of the fifth factor of a tortious interference claim under Wisconsin law is still relevant at the pleading stage. Moreover, plaintiff did not distinguish *Preston* on that basis.

employer into terminating his employment, and the employer's choice to reverse Wesbrook's previous termination because of the benefit he brought to the clinic. (*See* Compl. (dkt. #1) ¶¶ 13-15, 60-67, 72-74, 95-104.) Taking the allegations set forth in the complaint as true, as the court must at the pleading stage, plaintiff has adequately alleged that Marshfield Clinic did not benefit from his termination.

B.  Independent Tort

As for the second requirement -- that the acts were independently tortious -- plaintiff points to three separate torts which he claims were alleged in his complaint: (1) civil conspiracy under Wis. Stat. § 134.01; (2) defamation; and (3) False Claims Act retaliation. For the reasons set forth below, this court finds plaintiff has not sufficiently plead any tort claim. Therefore, he has also failed to plead a viable tortious interference claim against defendants.

1. Civil Conspiracy Pursuant to Wis. Stat. § 134.01

Plaintiff contends that defendants conspired to injure his business reputation maliciously in violation of Wis. Stat. § 134.01.[5] Specifically, plaintiff alleges that defendants collectively and maliciously caused his termination by (1) providing the individual Board members and the Board of Directors with false and misleading information; (2) withholding other relevant information from the Board of Directors; and

---

[5] Plaintiff solely relies on a statutory civil conspiracy claim in arguing that he meets the independent tortious act requirement under *Preston*. As such, the court has not considered whether he has pled a common law civil conspiracy claim.

(3) denying plaintiff due process before his termination. (Pl.'s Reply (dkt. #14) 20-22.)

Wisconsin Statute § 134.01 allows the imposition of criminal penalties on those who conspire to "willfully or maliciously injur[e] another in his or her reputation, trade, business or profession." Wisconsin courts have interpreted this statute to provide a civil cause of action for those who are harmed by its violation. *Radue v. Dill*, 74 Wis. 2d 239, 245, 246 N.W. 2d 507, 511 (1976). A claim for a conspiracy in violation of § 134.01 requires the plaintiff to establish that: (1) the defendants acted together; (2) with a common purpose to injure the plaintiff's reputation; (3) with malice; and (4) the acts financially injured the plaintiff. WIS JI-CIVIL 2820 (2008); *see also Virnich v. Vorwald*, 664 F.3d 206, 213 (7th Cir. 2011). Here, plaintiff has sufficiently alleged defendants acted together with a common purpose to injure the plaintiff's reputation, and that defendants financially injured him. Plaintiff has not, however, sufficiently alleged defendants acted with malice.

Malice for purposes of a § 134.01 claim means "doing a harm malevolently for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition]." *Virnich*, 664 F.3d at 213 (quoting *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 87-88, 469 N.W.2d 629, 635 (1991)) (alteration in *Virnich*). Additionally, *all* parties to the alleged conspiracy must act with malice. *Maleki*, 162 Wis. 2d at 86, 469 N.W.2d at 634 ("[M]alice . . . must be proved in respect to both parties to the conspiracy.").

Plaintiff has not sufficiently alleged Ulrich, Martin, or Lee acted with the required malice toward plaintiff individually, rather than in furtherance of their own personal

11

gain. Specifically, plaintiff alleges Ulrich's and Martin's actions were driven by their attempts to restructure the Clinic's governance structure. Plaintiff Wesbrook was one of the primary opponents of Ulrich's restructuring plans and repeatedly acted to prevent the plans. (*Id.* at ¶¶ 24-27, 38, 40-41, 54-55, 126-129, 136-142.) The adoption of the plan would have resulted in power and financial gains for Ulrich and Martin. (Compl. (dkt. #1) ¶ 85.) As plaintiff himself alleges, "inducing the Board of Directors to terminate Wesbrook, [defendant] Ulrich and Martin would [have] . . . enhance[d] their own prospects" for Interim System CEO and Clinic Vice President. (*Id.* at ¶ 86.) Similarly, plaintiff alleges Lee's actions were motivated by personal gain -- specifically, self-preservation. (*Id.* at ¶ 94 ("Lee's motivation for interference include the fact that her leadership of the National Farm Medicine Center was under scrutiny by Vidaillet and Wesbrook[.]").)

Based on these allegations, none of the three defendants did harm for harm's sake, each acted in furtherance of their own professional security or advancement. As the Seventh Circuit has explained, only "an *irrational* desire to cause harm for the sake of harm is actionable under section 134.01. A *rational* desire to cause harm for the sake of competitive advantage is not." *Virnich*, 664 F.3d at 213; *see also Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 992 (W.D. Wis. 2010) ("[T]he allegations suggest that plaintiff and any co-conspirator performed in the allegedly injurious acts to make money (for their own sake), not to make defendant lose money ('for harm's sake').").

The only defendant who allegedly acted with malice toward plaintiff was Belongia, whose "motivation was rooted in his personal animosity toward Wesbrook, which he

12

conveyed to many people at various times verbally and in writing." (Compl. (dkt. #1) ¶ 93.)  In order to allege a conspiracy under § 134.01, however, plaintiff must allege that two or more defendants acted with malice.  *See Maleki*, 162 Wis. 2d at 86, 469 N.W.2d at 634.  By alleging that the personal motivation behind the actions of the three other defendants was for competitive advantage, the plaintiff's own pleading precludes a claim of civil conspiracy.  *See Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995) ("Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse.").

### 2. Defamation

Plaintiff also argues that he has sufficiently alleged a claim of defamation against defendants as an independent tortious act.  (Pl.'s Opp'n (dkt. #14) 23.)  To state a claim of defamation under Wisconsin law, a plaintiff must allege that the defamatory statement: "(1) was spoken to someone other than the person defamed, (2) is false, (3) is unprivileged and (4) tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Torgerson v. Journal Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997); *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 672 N.W.2d 306.

Defendants argue the heightened pleading standard for defamation under Wis. Stat. § 802.03(6) applies, which requires that plaintiff plead the "particular words complained of."  (Defs.' Br. (dkt. #10) 12.)  However, "[i]t is well settled that a federal court sitting in diversity applies federal pleading requirements even when the claim

13

pleaded arises under state rather than federal law." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008); *see also Schindler*, 2007 WL 60924, at *11-12 (federal courts apply state law to resolve substantive questions and federal law to resolve procedural and evidentiary issues, which includes pleading requirements). While Wisconsin courts may require heightened pleading of a defamation claim, there is no such requirement in federal court. *See Muzikowski v. Paramount Pictures Corp.*, 322 F. 3d 918, 926 (7th Cir. 2003) (explaining that Illinois's pleading rule does not apply; a "claim for defamation *per se* does not fall under the special pleading regime of Rule 9, and thus [plaintiff] is entitled to the usual rules for notice pleading established by Rule 8").

Even under the arguably more favorable light of Fed. R. Civ. P. 8, plaintiff's vague and conclusory allegations are insufficient to state a claim for defamation. A complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citation, and brackets omitted). The complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

While plaintiff claims to have "identifie[d] numerous false statements of fact that

were advanced pursuant to [d]efendants' conspiracy," he then cites to roughly twenty paragraphs in his complaint and, even more generally, to the attachments to defendants' motion.  (Pl.'s Opp'n (dkt. #14) 23 (citing Compl. (dkt. #1) ¶¶ 45, 51, 63, 92, 120-124, 144, 151-158, 161, 164; Defs.' Br., Exs. 1-5 (dkt. #10-1 to 10-5)).)  After examining these paragraphs and documents, however, the court finds they contain either conclusory or vague allegations, or specific statements that could be false but which are not about the plaintiff.

### a. Overly Vague and Conclusory Allegations

In *Lucien v. Preiner*, 967 F.2d 1166 (7th Cir. 1992), the plaintiff alleged that a letter sent by the defendant to a third party contained "concoctions, intentional misrepresentations, and slanderous statements," but did not identify anything specific within the letter. *Id*. at 1167-68.  The plaintiff argued that for the purposes of a motion to dismiss, the court must accept as true, the allegation that the defendant's letter contained lies. *Id*. at 1168.  Even after examining the letter, the Seventh Circuit rejected that argument, explaining that even under the "liberal system of notice pleading," more was required. *Id*.  The court held that the plaintiff's "failure to allege anything more than that the defendant lied in her letter, without even stating what those lies [were], is simply not enough to state a claim." *Id*.

Here, plaintiff pleads little more than the *Lucien* plaintiff.  In his complaint, plaintiff complains of "false information" contained in various letters, but chose neither to attach the actual letters, nor to state what the false information was.  Specifically, plaintiff alleged:

> 120. On November 30, 2011, . . . Belongia sent a letter to Ulrich, which consisted of a collection of allegations that Lee and he made in July 2011 and found to be not true by the Research Foundation Board of Trustees in August; restatements of allegations made by Ulrich in April 2010 against Vidaillet and Wesbrook that had been rejected by both the Board of Trustees and the Clinic Board . . . .
>
> 123. Lee called [various physicians] and conveyed false information to them about Wesbrook.
>
> 124. [As a result of the ¶123 phone call, a letter was written] by former Congressman and Defense Secretary Melvin R. Laird ('Laird') containing false information which Ulrich subsequently used with great effect against Wesbrook.
>
> 144. Ulrich and Martin's efforts to convince the Board of Directors to fire Wesbrook using false information accelerated and intensified . . . .
>
> 149. Ulrich . . . called each Board Member . . . [and] communicated false and misleading information to them about Wesbrook.
>
> 151. Ulrich also sent to all Members of the Board two documents that contained extensive false and misleading information, one being Belongia's November 30, 2011 letter. The second was the letter from Laird.
>
> 157. Another damaging document with extensive false and misleading information was written by Ulrich . . . [which contained] Ulrich's own false interpretation of events, which conflict in significant instances with well documented facts.
>
> 161. Ulrich and Martin . . . [caused plaintiff's termination] by providing individual Board Members with false and misleading information . . . .
>
> 164. Belongia and Lee . . . provide[d] Ulrich, individual Board Members, and through Ulrich the full Board of Directors with false and misleading information . . . .

(Complaint (dkt. #1).)

In their motion to dismiss, defendants attached five documents referenced in plaintiff's complaint, including the November 30, 2011 letter, the Laird letter, and the Ulrich Memo. Plaintiff first opposed the attachment of the letters and memo to the motion, but then later points to the documents for support of his defamation claim.[6] Even after extensive review of plaintiff's allegations and the documents defendants attached, this court is unable to determine what the specific "false and misleading" statements were that plaintiff would now have defendants answer for. Indeed, plaintiff never identifies -- even in a general sense -- the substance of these alleged statements.

While plaintiff does not need to plead the particular words complained of, he must at least offer something more than "labels and conclusions." *Ashcroft*, 129 S. Ct. at 1949. Plaintiff's "failure to allege anything more than that the [defendants] lied in [their letters and communications] . . . is simply not enough to state a claim," even under federal rules "liberal system of notice pleading." *Lucien,* 967 F.2d at 1168. Therefore, plaintiff has fallen short of his burden to put defendants on notice of his claim.

### b. Potentially false, but unrelated, allegations

Nor is it enough for plaintiff to identify general false statements that defendants allegedly made in the course of this dispute. To plead a claim of defamation, plaintiff

---

[6] The court may consider these letters in deciding defendants' motion to dismiss because the complaint references them and they are central to plaintiff's claims. *See Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) (holding that a court may consider documents to which the complaint had referred, which are "concededly authentic" and "central to" the plaintiff's claim); *see also Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

must allege false statements the defendants made about *plaintiff*. *Schoenfeld v. Journal Co.*, 204 Wis. 132, 136, 235 N.W. 442, 444 (1931) ("It is well settled that defamatory words must refer to some ascertained or ascertainable person and that that person must be the particular plaintiff.").

In contrast, plaintiff Wesbrook points this court's attention to statements generally regarding:

1. the staffing of the clinic:

> 45. In April 2010 . . . Ulrich falsely claimed that 15 successful scientists had left the Research Foundation due to a climate of fear and intimidation established by Vidaillet.
>
> * * * *
>
> 63. The report established that the allegations by Ulrich and his allies that 15 well-qualified scientists departed MCRF due to hostile climate were false.

2. the clinic's research contracts:

> 156. [U]lrich provided the Board Members other documents containing false information and deliberately misleading information. One was a December 15, 2011 letter from Belongia to Ulrich in which Belongia threatens [to resign from the clinic, and thus cause the clinic to lose a large contract – an effect Plaintiff claims is false].

3. Ulrich's potentially inaccurate characterization of an information leak and an event summary report:

> 51. In May 2010 Ulrich told the Clinic Board of Directors that there was "a traitor in our midst" that needed to be identified and fired as punishment for "leaking" confidential information.[7]

---

[7] Plaintiff also appears to allege that he was the source of the "leak" and that it was not a leak because he was obligated to share the information in the way he did. Plaintiff does

> * * * *
> 157. Another damaging document with extensive false and misleading information was written by Ulrich . . . [which contained] Ulrich's own false interpretation of events, which conflict in significant instances with well documented facts.

(Complaint (dkt. #1).) Even assuming all of these allegations are true, the allegedly false statements did not relate to plaintiff and thus none of these statements support a defamation claim.[^1]

### 3. False Claims Act Retaliation

Finally, plaintiff contends that he alleged sufficient facts to support an independent tort based on violation of the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), because under state law, "it is illegal to retaliate against an employee who uncovers and reveals evidence of taxpayer fraud." (Pl.'s Opp'n (dkt. #14) 23.) Under that provision of the FCA, however, the only liable entity is the plaintiff's employer, not the individual defendants named in this lawsuit. *See United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867, 870 (8th Cir. 2003) (explaining that a retaliation claim under the FCA can only be directed against the employer, not against individuals); *Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 66 (same; citing cases). Therefore, plaintiff's alleged retaliation claim cannot suffice as his required independent tort.

Having rejected the three independent tortious acts identified by plaintiff, where

---

[^1]: not allege Ulrich or the Board of Directors ever knew, nor could even assume that Wesbrook was the source of the information, much less argue that the calling of an unidentified person a traitor constitutes defamation.

does this leave us? As explained above, plaintiff's FCA retaliation claim fails as a matter of law and plaintiff has pled himself out of a civil conspiracy claim. Plaintiff, however, may be able to plead adequately a defamation claim to satisfy Rule 8. Therefore, the court will grant defendants' motion to dismiss without prejudice to plaintiff filing an amended complaint providing additional details sufficient to place defendants on notice of a plausible defamation claim, which in turn would satisfy the independent tortious act of his intentional tortious interference claim.

ORDER

IT IS ORDERED that:

1) defendants Karl J. Ulrich, M.D., Edward A. Belongia, M.D., Barbara C. Lee, Ph.D., and Ronald F. Martin, M.D.'s motion to dismiss (dkt. #9) is GRANTED; and

2) plaintiff Stephen Wesbrook, Ph.D's complaint is DISMISSED without prejudice. Plaintiff may have until March 17, 2014, to submit an amended complaint. If plaintiff fails to submit a revised complaint by that date, then the clerk of court is directed to close this case for plaintiff's failure to prosecute.

Entered this 3rd day of March, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge