IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
--------------------------------------------------------------------

STEPHEN D. WESBROOK, Ph.D.,

                Plaintiff,                    OPINION AND ORDER

   v.

                                          13-cv-494-wmc

KARL J. ULRICH, M.D., EDWARD A.
BELONGIA, M.D., BARBARA C. LEE, Ph.D.,
and RONALD F. MARTIN, M.D.,

                Defendants.
--------------------------------------------------------------------

      In his amended complaint, plaintiff Stephen D. Wesbrook, Ph.D., asserts a claim of tortious interference with his employment and defamation against defendants, former colleagues at Marshfield Clinic. Defendants responded with a renewed motion to dismiss, arguing that Wesbrook had failed to cure the deficiencies pointed out in the court's original order of dismissal. For the reasons set forth below, the court will deny the motion to dismiss as to defendants Karl Ulrich, M.D., and Edward Belongia, M.D., but will grant it and dismiss as to defendants Barbara Lee, Ph.D., and Ronald Martin, M.D.

BACKGROUND

      On July 11, 2013, plaintiff filed a complaint against defendants Karl Ulrich, M.D., Edward Belongia, M.D., Barbara Lee, Ph.D., and Ronald Martin, M.D., claiming that they tortuously interfered with his employment at Marshfield Clinic, eventually causing his termination from a position as Deputy Director of the Marshfield Clinic Research

Foundation ("MCRF"). The facts alleged in the original complaint were previously set forth in the court's order dated March 3, 2014 (dkt. #25), and will not be repeated at length here. The court dismissed plaintiff's complaint without prejudice, holding that plaintiff failed to sufficiently plead an independent tort claim as required under *Preston v. Wisconsin Health Fund*, 397 F.3d 539 (7th Cir. 2005), and Rule 12(b)(4).[1] Specifically, regarding an independent tort claim of defamation, the court found that plaintiff's complaint consisted of vague and conclusory allegations of "false or misleading information" without providing sufficient notice of the content of the false information. (3/3/14 Op. & Order (dkt. #25) 15-17.) The court also found that claims sufficiently alleging statements of false or misleading information only indicated possible defamation against parties other than the plaintiff. (*Id.* at 17-19.)

As a result, the court dismissed the complaint without prejudice, while allowing plaintiff the opportunity to submit an amended complaint. On March 17, 2014, plaintiff did so (dkt. #27), along with four attached documents: (1) a letter from former Congressman and Defense Secretary Melvin R. Laird to Dr. Humberto Vidaillet ("Vidaillet") (dkt. #27-1); (2) a November 30, 2011, letter from Belongia to Ulrich (dkt. #28-1); (3) a December 19, 2011, file memorandum by Ulrich (dkt. #27-2); and (4) a December 19, 2011, letter from Dr. Vidaillet to fellow Board members responding to Ulrich's letter (dkt. #28-2).

---

[1] In *Preston*, the court held that tortious interference claims brought in an employment context required that the plaintiff demonstrate that: (1) the defendant's interference was not to the benefit of the employer; and (2) the act was independently tortious. (Order (dkt. #25) 7 (citing Defs.' Br. (dkt. #10) (discussing *Preston*, 397 F.3d at 544)).)

To survive defendants' renewed Rule 12(b)(6) motion, plaintiff must sufficiently plead that: (1) Marshfield Clinic did not benefit from defendants' alleged interference; and (2) the defendants' acts were independently tortious. Since plaintiff was already found to have sufficiently pled that Marshfield Clinic did not benefit from the alleged interference (*see* 3/13/14 Op. & Order (dkt. #25) 9-10), the court's review of the amended complaint centers on whether plaintiff has sufficiently alleged defamation under Wisconsin law in compliance with Federal Rule of Civil Procedure 8.[2]

OPINION

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in her favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). To satisfy Rule 8, plaintiff need not provide detailed factual allegations, but must provide "just enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and

---

[2] As discussed in the order dated March 3, 2014, though the court applies Wisconsin state law in this case, it nevertheless applies Fed. R. Civ. P. 8 regarding pleading standards. (Order (dkt. #25) 13-14.) As a result, no heightened pleading standard is required for a defamation claim in this court, as it would be in a Wisconsin state court. *See* Wis. Stat. § 802.03(6) (2009).

3

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). A plaintiff must provide enough facts to state a claim that is plausible on its face and allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Complaints that merely provide vague and conclusory allegations are insufficient to state a claim for defamation; rather, the complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

Under Wisconsin law, to successfully allege a claim for the independent tort of defamation, a plaintiff must allege that the defamatory statement: "[1] was spoken to someone other than the person defamed, [2] is false, [3] is unprivileged and [4] tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Torgerson v. Journal Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997); *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 672 N.W.2d 306. Even if a defendant is not the original source of a defamatory statement, repeating or republishing defamatory statements made by others can still lead to liability for defamation. *Hart*, 2003 WI App 231 at ¶ 25 ("One who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it") (quoting Restatement (Second) of Torts § 578 (1977)).

Here, since Ulrich, Belongia, Lee, and Martin allegedly all originated, repeated, or republished allegedly defamatory statements, each can potentially be held liable for

4

defamation, regardless of whether or not they were the original source of information. However, repeated and republished statements must meet the same four elements of defamation for liability to attach, and all pleadings must still meet the requirements of Rule 8.

I. **Vague and Conclusory Allegations in Claims against Martin and Lee**

The court will grant the defendants' motion to dismiss regarding defendants Lee and Martin due to plaintiff's failure to present more than vague and conclusory allegations against them. Specifically, plaintiff's allegations against Lee are as follows:

> 95. As the Clinic Board of Directors had reversed Ulrich when he fired Wesbrook in September 2011, Ulrich and Martin with assistance from Belongia and Lee took a number of defamatory communications and actions to damage Wesbrook's reputation as a precursor to having him terminated.
>
> * * *
>
> 125. On November 30, 2011 . . . Belongia sent a letter to Ulrich, which consisted of allegations that Lee had made in July 2011 and found not to be true by the Research Foundation Board of Trustees in August . . . .
>
> 126. On information and belief, Lee assisted in the preparation of a false letter prepared by Laird, which was published by Belongia and Ulrich shortly thereafter, falsely stating that forty other individuals had complained that Wesbrook was responsible for the problems at the Research Center.
>
> * * *
>
> 130. Lee likewise conveyed to a number of clinic and Research Foundation employees her intent to get Wesbrook removed from his job. During this same time period, Lee called Dr. Dean Emanuel, Dr. George Magnin, and other

5

retired physicians who had once conducted research at Research Foundation's National Farm Medicine Center and conveyed false and defamatory information to them about Wesbrook.

\* \* \*

158. The Laird letter, which was originally sent to Vidaillet with a copy to Ulrich, stated in part: . . . "The Problem is not you Humberto, but your deputy director [Wesbrook] and administrative assistant at the research center. This ran through all of my interviews. I found not one person who wanted you fired!!"

159. On information and belief, the information in Laird's letter came from Lee.

160. The Laird Letter contained inaccuracies: Laird was not the "Marshfield Clinic [R]esearch Chief," and was not even employed by Marshfield Clinic; as he is over 90 years old and in poor health, it is highly improbable that he contacted "over forty individuals"; and Vidaillet had just survived an October 25 . . . attempt by Ulrich and Martin to have him dismissed as MCRF Director, it is highly improbabl[e] that of 40 people Laird "found not one person who wanted [Vidaillet] fired." Given Laird's iconic status in the community, the effect was as Ulrich intended: devastating for Wesbrook and his reputation.

161. On information and belief, the information in Laird's letter came from Lee through the retired physicians she had contacted . . . .

(Am. Compl. (dkt. #27).)

Plaintiff's allegations against Lee are still not sufficient to fulfill the requirements of Rule 8. As an initial matter, the allegations are too vague and conclusory as to the actual *content* of the alleged defamatory statements. For example, plaintiff's allegation in paragraph 130 that Lee called a number of retired physicians and "conveyed false and defamatory information to them about [plaintiff]" fails to meet the requirements of Rule

6

8. Indeed, the only change plaintiff makes to paragraph 130 in his amended complaint is to add the words "and defamatory." The closest thing to an alleged specific, defamatory statement by Lee is found at paragraph 126, but even there the statements is one made in a letter authored by Laird and published to Belongia and Ulrich.

While plaintiff claims that Lee "assisted" in the preparation of Laird's "false letter," as in paragraphs 95 and 125, plaintiff provides no elaboration as to how Lee assisted, particularly as to the false information she provided. Similarly, in paragraphs 159-61, plaintiff provides no specificity as to what false information came from Lee. Contrary to plaintiff's assertions to the contrary, these allegations fail to provide Lee with sufficient notice as to the nature of plaintiff's defamatory claims alleged against her in particular.

Plaintiff's amended complaint also does little, if anything, to address the deficiencies in his claims against Martin previously noted by this court. In particular, plaintiff's allegations of fraud and defamation against Martin are still vague and conclusory and provide no specific statement that is capable of a defamatory meaning.

> 56. On July 27, 2010, Ulrich told the Board that Wesbrook had recently . . . left a voice message with a lawyer. Without any inquiry into the facts, Martin falsely alleged that Wesbrook engaged in wrongdoing and insisted that Wesbrook be fired on the spot and escorted out of the Clinic by security guards.
>
> * * *
>
> 95. Ulrich and Martin with assistance from Belongia and Lee took a number of defamatory communications and actions to damage Wesbrook's reputation as a precursor to having him terminated.

7

> 97-98. At the Board of Directors' meeting on September 6, 2011, Ulrich . . . attempt[ed] to fatally damage Wesbrook's reputation . . . . Ulrich and Martin devoted approximately 75 percent of the time, over three hours, in an attempt to attack Wesbrook.
>
> * * *
>
> 164. On information and belief, Martin also spoke to a number of Board Members before the [December 20] meeting conveying similar false and defamatory information and encouraging them to support Ulrich's request to have Wesbrook fired.
>
> 168. Another damaging document with extensive false and misleading information was written by Ulrich himself on December 19, 2011, as a "Memo to File" entitled "Chronology of MCRF Administrative concerns" which, on information and belief, Ulrich prepared with Martin's assistance. . . . That nine-page memorandum conveys a false interpretation of events, which conflict in significant instances with well documented facts.

(Am. Compl. (dkt. #27).)

Each allegation made against Martin lacks even the relatively low level of detail required by Rule 8. Throughout, plaintiff fails to provide more than vague allegations that Martin conveyed "false and defamatory information" or "attacked" plaintiff in hopes of getting him fired. Even after examining the nine-page memorandum attached to plaintiff's complaint (dkt. #27-2), it remains unclear how Martin assisted Ulrich in preparation of the memo, and further unclear as to what, if any, information in the memo came from Martin. As a result, plaintiff again failed to provide Martin with sufficient notice as to the nature of his claim.

Plaintiff also effectively waived his claims against Martin by failing to address the argument that the allegations against him were insufficient. *See Alioto v. Town of Lisbon*,

8

651 F.3d 715, 721 (7th Cir. 2011) (holding that plaintiff's failure to present legal arguments or cite relevant authority to substantiate a claim in response to defendants' motion to dismiss resulted in a waiver of that claim) (citing *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005)). Regardless, plaintiff has again failed to sufficiently allege defamation against Martin with specificity.

## II. Claims Against Ulrich and Belongia

Defendants concede that the amended complaint contains sufficient allegations of specific, false statements by defendants Ulrich and Belongia to proceed past the motion to dismiss stage. As a result, only two issues remain pertaining to those defendants: (a) whether plaintiff has sufficiently alleged that statements made by Ulrich and Belongia were unprivileged; and (b) whether plaintiff has sufficiently alleged that their statements were defamatory in nature.

### A. Common Interest Privilege

Under the common interest privilege, defamatory statements are conditionally privileged if they "are made in furtherance of common property, business, or professional interests" -- a privilege that extends to "partners, officers of a corporation for profit, fellow shareholders . . . fellow servants . . . [and] persons associated in professional activities." Restatement (Second) of Torts § 596 cmt. d (1977); *see Zinda v. La. Pac. Corp.*, 149 Wis. 2d 913, 923, 440 N.W.2d 548, 552 (1989). The common interest

privilege exists unless the defendant abuses the privilege.³ *Zinda*, 149 Wis. 2d at 924, 440 N.W.2d at 553 (citing *Ranous v. Hughes*, 30 Wis. 2d 452, 467, 141 N.W.2d 251 (1966)).

Defendants contend that all of the arguably actionable statements contributed to Ulrich and Belongia are barred from a claim of defamation by privilege. Though plaintiff fails to cite any case law in support, he principally responds that he need not negate defendants' assertion of conditional privilege at the pleading stage of this litigation. On this, plaintiff is correct. The Seventh Circuit and this court have both previously held that under Wisconsin law, a plaintiff need not anticipate the common interest privilege in his complaint by proffering evidence of abuse. *See Quinn v. Overnite Transp. Co.*, 24 Fed. Appx. 582, 586 (7th Cir. 2001) (unpublished) ("[C]onditional privilege is an affirmative defense . . . [plaintiff] need not plead facts that defeat the privilege."); *Emiabata v. Marten Trans., Ltd.*, 547 F. Supp. 912, 919 (W.D. Wis. 2007) (citing *Wisconsin v. Gilles*, 173 Wis. 2d 101, 496 N.W.2d 133, 138 (Ct. App. 1992)).⁴ Only

---

³ Generally, abuse of the common interest privilege may occur "by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; by the publication of the defamatory matter for some improper purpose; by excessive publication; or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." Restatement (Second) of Torts § 596 cmt. a (1977) (citing Restatement (Second) of Torts §§ 599-605A (internal citations omitted)).

⁴ Contrary to defendants' assertions, this court did not previously reject the argument that plaintiff need not plead that the defendants' allegations were privileged. Rather, the court merely provided a statement of the law regarding defamation in Wisconsin. (Order (dkt. #25) 13.) Defendants' citation to a Wisconsin jury instruction also fails to further their argument, as a motion to dismiss obviously deals only with whether a pleading is sufficient, not whether plaintiff will ultimately prevail on the merits of his claim.

after the defendant affirmatively claims and the court determines, that a conditional privilege exists does the burden of proof shift to the plaintiff to affirmatively prove abuse. *Zinda*, 149 Wis. 2d at 926, 440 N.W.2d at 554; *see also Calero v. Del Chem. Corp.*, 68 Wis. 2d 487, 499, 228 N.W.2d 737, 744 (1975).

At the pleading stage, plaintiff needs only to sufficiently identify defendants' false statements and allege their communication to a third party. *See Emiabata*, 547 F. Supp. at 919 (holding plaintiffs' defamation pleading was sufficient regardless of common interest privilege because they sufficiently alleged that defendant made defamatory statements to a third party). While the court would be remiss not to point out that plaintiff appears to have a steep uphill battle in overcoming the common interest privilege, it declines to address defendants' assertion of conditional privilege without a full record.

### B. Capable of Defamatory Meaning

Defendants also contend that none of the alleged statements made about plaintiff were defamatory. "Whether a particular communication is *capable* of a defamatory meaning is a question of law." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 800 (W.D. Wis. 2006) (emphasis added) (citing *Lathan v. Journal Co.*, 30 Wis. 2d 146, 153, 140 N.W.2d 417, 421 (1966)). In other words, dismissal is warranted only if the alleged statements cannot be reasonably understood as defamatory. *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-cv-168-wmc, 2011 WL 1206768, at *6 (W.D. Wis. March 15, 2011); *see also Starobin v. Northridge Lakes Dev. Co.*, 94 Wis. 2d 1, 10, 287 N.W.2d 747, 751 (1980).

In determining whether a statement is capable of a defamatory meaning, the court must examine the plain language of the statement "in the context of the communication as a whole." *Hy Cite*, 2011 WL 1206768 at *6 (citing *Westhy v. Madison Newspapers, Inc.*, 81 Wis. 2d 1, 6, 259 N.W.2d 691, 693 (1977); *Frinzi v. Hanson*, 30 Wis. 2d 271, 276, 140 N.W.2d 259, 261 (1962)). To be defamatory, a statement's plain meaning must tend to harm the plaintiff's reputation "so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him." *Hart*, 2003 WI App 231 at ¶ 21 (citing *Mach v. Allison*, 2003 WI App 11, ¶ 12, 259 Wis. 2d 686, 656 N.W.2d 766). Generally, statements of opinion are not defamatory. *Rigsby v. AM Cmty. Credit Union*, 2014 WI App 45, ¶ 9, 353 Wis. 2d 553, 846 N.W.2d 33. A defamatory statement must: (1) assert or imply a fact that is capable of being proven false; or (2) it must assert an opinion that directly implies the assertion of an undisclosed defamatory fact. *Mach*, 2003 WI App 11 at ¶ 12 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)). More particularly, statements of opinion are not actionable if they merely express "a subjective view, an interpretation, a theory, conjecture, or surmise," unless the defendant claims or purports to possess specific and objectively verifiable facts supporting that opinion. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

After construing the amended complaint in a light most favorable to plaintiff and assuming all allegations of fact to be true, the court finds that plaintiff has sufficiently plead that alleged statements made by Ulrich and Belongia were defamatory in nature. The court takes up each of the two remaining defendant's alleged statements in turn

below.

1. Allegations against Ulrich

Plaintiff sufficiently alleges two instances where Ulrich made or published statements that could have a defamatory meaning. Plaintiff first alleges that Ulrich created a memo to the file containing a chronology of events, which includes a number of false and defamatory statements relayed by other individuals. Since there is dispute between the parties as to the categorization of the chronology in the amended complaint, the court focuses on the attached memo itself. *Uebelacker*, 464 F. Supp. 2d at 804 ("Although courts do not presume that a plaintiff means to adopt every word in its exhibits, attachments trump contradictory allegations."). Ulrich states in the memo that individuals involved with MCRF had called plaintiff's management style "retaliatory," "coercive," "threatening," "abusive," and "contentious," as well as asserts that plaintiff had engaged in "oppressive management" and "retaliatory conduct." (Dkt. #27-2 at 2-3.)

Taken as a whole, such statements are arguably capable of a defamatory meaning if intended to be relied upon by others.[5] Ulrich allegedly took it upon himself to compile a full timeline of events with the alleged intention of getting plaintiff fired. Certainly, the statements themselves portray plaintiff as an abusive, tyrannical manager, who engaged

---

[5] The court infers that the memo was shared with the Board and used in the Board's decision to terminate Wesbrook's employment (*see* Am. Compl. (dkt. #27) ¶ 172.) Plaintiff, however, stops short of alleging that the memo was published, but defendant does not challenge a claim against Ulrich on that basis. As such, the court will leave this issue for another day.

in oppressive and coercive tactics with fellow employees. Such statements would obviously lower plaintiff in the estimation of the Board of Directors ("Board"), as well as others at MCRF, and potentially lead to his firing. As a result, Ulrich's memo is capable of a defamatory meaning.

Relying primarily on *Kerrigan v. Otsuka America Pharmaceutical, Inc.*, No. 13-1211, 2014 WL 1015934 (3d Cir. March 18, 2014) (unpublished), defendants contend that Ulrich's statements in the memo were purely opinion, and thus not capable of being defamatory. (Defs.' Reply 4-5 (dkt. #34).) Unlike the alleged defamatory statements in *Kerrigan*, Ulrich's statements resulted from a systematic method of data collection, purporting to rely on the testimony of MCRF employees. Given the nature of Ulrich's memo, it is reasonable to conclude at this point that Ulrich's statements are not pure opinion, but at least reference: (1) statements by others, which are capable of being confirmed, albeit perhaps not for the truth of the matter asserted; and (2) undisclosed, verifiable defamatory facts (e.g., plaintiff made threats to employees and engaged in retaliatory, coercive, and abusive conduct).

Plaintiff has also sufficiently alleged defamation against Ulrich regarding phone conversations with board members. Specifically, the amended complaint alleges:

> Ulrich communicated false, misleading, and defamatory information to the Board of Directors about Wesbrook, including but not limited to: (1) restatements of his previous allegations of a climate of fear and intimidation in the Research Foundation, attributed to Wesbrook, that was driving out highly qualified scientists; (2) restatement of his previous allegations of administrative and leadership failures by Wesbrook resulting in poor overall performance of the research program; . . . and (5) [that] Wesbrook failed to comply with the Performance Improvement Plan.

(Am. Compl. (dkt. #27) ¶ 163.)

Here, too, plaintiff sufficiently pleads defamation against Ulrich, at least to the extent that particular statements in Ulrich's communications are proved false. Similarly, plaintiff's allegations that Ulrich communicated false information about a climate of fear and intimidation and administrative and leadership failures arguably are obviously capable of a defamatory meaning, since both create a poor working environment for employees and indicate a deficient management style, which could easily harm one's professional reputation. Considering Ulrich is alleged to have communicated this information to the Board, his statements could inhibit confidence in plaintiff, damage his reputation, and potentially lead to his firing.

Further, as with the statements in Ulrich's memo, *see* discussion, *supra*, at pp.13-14, Ulrich's conversations with board members rise above the level of pure opinion. The first two allegations in paragraph 163 of the amended complaint reference a "climate of fear and intimidation" and restate "leadership and administrative failures" discussed in Ulrich's memo, in addition to other, undisclosed defamatory facts. In the same paragraph, defendants allege plaintiff's failure to comply with a performance improvement plan, which if nothing else casts doubt on plaintiff's ability to fulfill his duties at MCRF.

### 2. Allegations against Belongia

Plaintiff has also sufficiently alleged defamation against Belongia by reference to

statements in his November 30 letter.[6]  Specifically, plaintiff alleges at paragraphs 5, 125 and 126 of the amended complaint, respectively, that:

> On November 30, 2011, Belongia expanded his involvement with Ulrich's attempt to terminate Wesbrook's employment. On that date Belongia sent a letter to Ulrich, which consisted of a collection of allegations that Lee and he had made in July 2011 and found not to be true by the Research Foundation Board of Trustees in August; restatements of allegations made by Ulrich in April 2010 against Vidaillet and Wesbrook that had been rejected by both the Board of Trustees and the Clinic board in September 2010; and Belongia's views about how he would run MCRF if he were its Director.
>
> [Belongia's letter] include[s] false and defamatory statements about Wesbrook including, but not limited to, the following:
>
> - Other scientists had filed complaints against Wesbrook with Human Resources;
>
> - Scientists feared retaliation from Wesbrook for coming forward with similar complaints;
>
> - Wesbrook would be the cause of resignations of highly skilled scientists, resulting in the destruction of years of scientific program development;
>
> - Wesbrook has used coercion and intimidation in his interactions with scientists and administrators who disagree with him;
>
> - Wesbrook has used coercion and intimidation in his interactions with scientists and administrators who question his decisions.

---

[6] Plaintiff also references a December 15, 2011, letter from Belongia to Ulrich in his amended complaint. (Am. Compl. ¶ 167.)  The letter, however, only contains false statements regarding the awarding of a $15 million contract from a pharmaceutical company to MCRF with Belongia as the Principal Investigator.  The letter does *not* mention plaintiff. (*Id.*)  The allegations in paragraph 167, therefore, do not support a defamation claim against Belongia.  Moreover, plaintiff effectively abandoned this allegation by failing to respond to defendants' motion to dismiss regarding the letter in particular. *See Alioto*, 651 F.3d at 721.

(Am. Compl. (dkt. #27) (internal quotations omitted).)

Although Belongia's statements that plaintiff caused resignations and destroyed years of program development may be purely predictive opinion, his other statements are verifiable facts or imply an objective fact, which could harm plaintiff's reputation, such that they arguably are defamatory in nature. First, Belongia's statement that other scientists had filed complaints against plaintiff constitutes a factual statement. Such a statement when made to Ulrich, and certainly when published to the Board, could harm plaintiff's reputation in the eyes of those who control his fate and cause the Board to consider ending its association with him. Thus, Belongia's statement regarding complaints from scientists could be defamatory.

Second, again contrary to defendants' assertions, Belongia's statements that other scientists feared coming forward with complaints about plaintiff for fear of retaliation and that plaintiff used coercion and intimidation towards those who disagreed with him or question his decisions are not purely opinion. Like Ulrich's statements in the memo, Belongia's statements resulted from a systematic data collection effort based on MCRF employee testimony that distinguishes Belongia's statements from pure opinion. Thus, plaintiff has sufficiently pled defamation against Belongia.

ORDER

IT IS ORDERED that:

1) defendants' motion to dismiss (dkt. #30) is GRANTED as to defendants Barbara C. Lee, Ph.D., and Ronald F. Martin, M.D; and DENIED in all other respects; and

2) the clerk's office should set a scheduling conference with Magistrate Judge Crocker to reestablish a schedule, including a trial date.

Entered this 5th day of February, 2015.

                                BY THE COURT:

                                /s/

                                _____
                                William M. Conley
                                District Judge